## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WILLIAM H. BOOTHE,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:06-cv-784
(Spiegel, J.; Hogan, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB) and Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 7), the Commissioner's response in opposition (Doc. 8), and plaintiff's reply memorandum. (Doc. 9).

### PROCEDURAL BACKGROUND

Plaintiff, William H. Boothe, was born in 1969, and was 36 years old at the time of the ALJ's decision. Plaintiff attended high school through the tenth grade. His past work history included jobs as a cook and construction worker. Plaintiff filed applications for DIB and SSI on October 24, 2003, alleging disability since July 2002 due to herniated disks, pain and leg cramps, muscle spasms and headaches. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff requested and was granted a de novo hearing before an ALJ. On October 12, 2005, plaintiff, who was represented by counsel, appeared and testified at a hearing

before ALJ Ronald Jordan.

On March 15, 2006, the ALJ issued a decision denying plaintiff's DIB and SSI applications. The ALJ determined that plaintiff suffers from severe impairments of degenerative disc disease in the lumbar spine and depression, but that such impairments do not meet or equal the level of severity described in the Listing of Impairments. (Tr. 18). The ALJ determined that plaintiff's allegations concerning the disabling severity of his symptoms are not corroborated by the medical evidence and not found to be credible. (Tr. 18). According to the ALJ, plaintiff retains the residual functional capacity (RFC) to: lift ten pounds occasionally and five pounds frequently; in an eight-hour workday, he can walk one hour at intervals of no more than ten minutes; he can stand six hours at intervals of 40 minutes, then must sit for at least 15 minutes; he can sit six hours, but must have the opportunity to stand an stretch for up to five minutes after one hour of sitting; he can occasionally climb stairs or ramps, but cannot climb ladders, scaffolds, or ropes; he can stoop only to the extent necessary to perform work at a table, desk or workbench; he should not operate foot controls and should not perform any overhead work bilaterally; he should not work around hazards such as unprotected heights or unguarded moving machinery; he is limited to work that involves only simple one or two step repetitive tasks and involves understanding an carrying out of only simple instructions; his goals cannot be independently set, but must be set and monitored by his supervisor; and he must work in a stable environment with little or no change. (Tr. 19). The ALJ determined that plaintiff could not perform his past relevant work, but could perform a significant number of other jobs in the national economy, including jobs as a sedentary unskilled assembler, production inspector, and hand packager. (Tr. 19). Consequently, the ALJ concluded that plaintiff is not disabled under the

2

Act, and therefore not entitled to DIB or SSI.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

3

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the

4

national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d

1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461

U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the

physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). Basic work

activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to

perform physical functions, the capacity for seeing and hearing, and the ability to use judgment,

respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b).

Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the

severe impairment requirement is a threshold element which plaintiff must prove in order to

establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357

(6th Cir. 1984). The severity requirement may be employed as an administrative convenience to

screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen,*

No. 87-6189, slip op. at 4 (6th Cir. Oct.28, 1988). An impairment will be considered nonsevere

only if it is a "slight abnormality which has such minimal effect on the individual that it would

not be expected to interfere with the individual's ability to work, irrespective of age, education,

and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985)(citing

*Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue

must be supported by substantial evidence. *Mowery v. Heckler*, 771 F.2d 966 (6th Cir. 1985).

Plaintiff has the burden of establishing disability by a preponderance of the evidence.

*Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v.*

*Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by

showing an inability to perform the relevant previous employment, the burden shifts to the

Commissioner to show that plaintiff can perform other substantial gainful employment and that

such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir.

1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima

facie case, the Commissioner must come forward with particularized proof of plaintiff's

individual capacity to perform alternate work considering plaintiff's age, education, and

background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321,

323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d

962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is

entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie

case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v.*

*Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

If the Commissioner's decision is not supported by substantial evidence, the Court must

decide whether to reverse and remand the matter for rehearing or to reverse and order benefits

granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision

"with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*,

111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at

steps one through four of the sequential evaluation, remand is often appropriate so that the

sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th

Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the

Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to

consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).

## HEARING TESTIMONY

Plaintiff testified that he was injured in July 2002, and collected worker's compensation (WC) benefits for 12 to 16 months. (Tr. 278). Plaintiff underwent surgery in April 2003. (Tr. 279). He testified that he attempted to work in 2002 or 2003, but was unable to. (Tr. 279-81). Plaintiff stated that in June 2003, his WC claim was denied and that he had no further treatment in 2003 and 2004 because he could not afford it. (Tr. 281, 284). In February 2005, seven months before his October 2005 ALJ hearing, plaintiff started seeing a physician at University Rehabilitation Center. (Tr. 282). Plaintiff testified that the physician agreed to see him pending

7

settlement of his WC appeal. (Tr. 282-83).

Plaintiff testified he could not return to his past work because he was unable to stand for long periods of time, could not move quickly, and was restricted from bending, pulling or tugging. (Tr. 290). Plaintiff alleged he had low back pain, spasms, and cramps. (Tr. 291). He testified he could sit for 20 to 30 minutes at one time, stand for 30 to 45 minutes at one time, lift five to ten pounds, and walk for 30 to 40 yards. (Tr. 292-93). He testified he needed help dressing. (Tr. 294). Plaintiff wore a back brace and underwent injections. (Tr. 294). He took pain medication with no side effects, and he quit taking a sleeping aid because it made him feel "strange and funky." (Tr. 299). Plaintiff alleged he was depressed and no longer socialized and had attention and concentration difficulty. (Tr. 296-97). Plaintiff cared for his six-year-old daughter, and his fiancé's eight-year-old son. (Tr. 286-87). Plaintiff testified he was unable to do much at home and needed to sit and stand for comfort. (Tr. 287). He denied doing any yard work, but admitted he had a driver's license and owned a car. (Tr. 287-88).

## MEDICAL EVIDENCE

In July 2002, plaintiff reported to his physician, Dr. Frede, that he injured his back at work two weeks earlier. (Tr. 118). He reported he had back pain throughout his adult life, exacerbated by lifting heavy items. (Tr. 118). Plaintiff denied headaches, numbness, depression, or anxiety. (Tr. 118). Physical examination was normal with significant muscle spasm in his spine; neurological examination revealed symmetrical reflexes and no motor or sensory deficits. (Tr. 118). Dr. Frede offered to release plaintiff from work for two weeks and prescribed medication, one prescription, with no refills. (Tr. 119). Two weeks later, plaintiff again denied headaches, and reported pain after he cut his grass. (Tr. 120). Physical examination was again

8

normal, and Dr. Frede indicated plaintiff had back pain with radiculopathy. (Tr. 121). He noted, however, that "I can't solicit any abnormalities on physical exam other than pain." (Tr. 121). He ordered a back MRI which indicated "Mild L5-S1 spondylosis." (Tr. 123-24).

On July 30, 2002, Dr. Frede referred plaintiff to a pain clinic. (Tr. 122). Plaintiff was seen at the pain clinic on September 4, 2002. Examination yielded "no objective evidence of any type of motor or sensory deficit" in his arms or legs. (Tr. 131, 133). He underwent epidural steroid blocks, and, following his first treatment, reported 25-30% improvement in pain. (Tr. 131, 133).

In November 2002, plaintiff was seen for rehabilitation therapy. (Tr. 149). Physical examination was normal except for pain with right straight leg raising. (Tr. 150). Reflexes were symmetrical, muscle strength was 5/5 (normal), and sensation was intact. (Tr. 150). A December 13, 2002 examination also yielded normal findings, including negative nerve root tension signs, symmetrical reflexes, and 5/5 muscle strength. (Tr. 153). Plaintiff was released to work for "light duty work for 8 hours per day" and required an option to "shift positions from sitting to standing at his discretion" with no lifting more than 5 pounds and no bending or twisting. (Tr. 147, 153).

In December 2002, and January 2003, and plaintiff underwent bilateral SI transforaminal nerve root block (steroid injections); the first improved his symptoms 70% for three weeks. (Tr. 157, 162). Plaintiff elected to undergo lumbar discography. (Tr. 167).

In March 2003, plaintiff underwent CT scan of his lumbar spine, which revealed moderate disc protrusion and a central disc herniation and annular tear at L4-5 and L5-S1 "without definite evidence of nerve root compression." (Tr. 174, 177, 181-84). Physical

9

examination continued to yield normal findings, including negative nerve root tension signs; normal muscle strength in all limbs; and symmetrical reflexes. (Tr. 186). On April 9, 2003, plaintiff underwent coblation/nucleoplasty (a process of decompressing the disc through removal of a portion of the nucleus) at the L5-S1 and L4-5 levels. (Tr. 191). One week later, he reported his back symptoms were 10% better but he still had leg problems. Plaintiff wore a back brace as instructed. (Tr. 193). Other than restricted range of back motion, physical examination was normal. (Tr. 194). On April 24, 2003, his back symptoms were 15% improved. On May 8, 2003, his lower leg symptoms were 20% improved. (Tr. 195, 197). In June 2003, plaintiff continued to complain of pain and Dr. Chow recommended that he see a surgeon for possible fusion surgery. (Tr. 199-202).

In December 2003, Dr. Kurzhals, a psychologist, examined plaintiff consultatively. (Tr. 209). Plaintiff reported he never had any psychiatric treatment, and consumed between 2 and 12 beers at a time, two to three times per week. (Tr. 210). He denied alcohol abuse. (Tr. 210). He reported that he sat around his home, watching his kids and television. (Tr. 210). On the basis of plaintiff's reports, Dr. Kurzhals diagnosed major depressive disorder, and assigned a Global Assessment of Functioning (GAF) score of 48. (Tr. 212).

Dr. Akaydin examined plaintiff consultatively on December 15, 2003. (Tr. 214). Plaintiff reported that he drank alcohol only socially but he smoked 1½ to 2 packs of cigarettes per day. (Tr. 214). Physical examination was essentially normal, with intact sensation and normal reflexes. Plaintiff had "[e]xcellent muscle tone and bulk throughout (quite solid) without any evidence of muscle atrophy or spasm." (Tr. 217). He had normal gait and station and was able to get on and off the examination table without apparent difficulty. (Tr. 217). Dr. Akaydin

**10**

described plaintiff as "quite healthy, solid, robust and fit" and concluded that there "should be numerous forms of at least mildly physically strenuous employment he should be quite capable of performing at present time including those of a relatively sedentary and 'sit-down' type nature." (Tr. 218).

State agency physicians reviewed the medical evidence and concluded that plaintiff could lift 20 pounds occasionally and ten pounds frequently, and sit, stand and walk for about six hours each in an eight-hour workday. (Tr. 221). He could not climb ladders, ropes, or scaffolds, and could occasionally climb ramps and stairs, and crawl and crouch. (Tr. 222).

State agency psychologists reviewed the medical record and concluded that plaintiff had some moderate limitations in social functioning and concentration, persistence, and pace, but he could perform simple, repetitive tasks. (Tr. 44).

In April 2005, plaintiff was seen by physicians at University Rehabilitation for leg and back pain. (Tr. 250-51). He was assessed with discogenic low back pain and neuropathic pain. (Tr. 251).

A lumbar spine MRI done in June 2005 showed disc bulging at L4-5 and L5-S1 with postsurgical changes. (Tr. 252).

In August 2005, plaintiff was seen by Dr. Sakalkale at University Rehabilitation for a follow-up for back pain. (Tr. 246). Plaintiff reported his condition had not changed since last seen in June 2003. (Tr. 246). He did not undergo a recommended surgical consultation because WC did not approve it. (Tr. 246). Use of medication had kept him "functional." (Tr. 246). Plaintiff exhibited tenderness and muscle spasm in his spine. His gait was normal and straight leg raising was negative. Spinal flexion was painful and restricted but extension was full and

**11**

pain free. (Tr. 246). Plaintiff had normal 5/5 strength, intact sensation, and symmetrical reflexes. (Tr. 246). Dr. Sakalkale's impression was lumbosacral myofascial syndrome, lumbar degenerative disc disease, dyskinesia at L4-L5 and L5-S1, status post coblation nucleoplasty at L4-L5, L5-S1 two years ago, discogenic low back pain secondary to above, and lumbosacral radiculitis secondary to above. (Tr. 246). Dr. Sakalkale refilled prescriptions for Flexeril and Vicodin, and strongly suggested a surgical consultation for his continued back pain to explore surgical options to help with pain. (Tr. 247).

In a follow-up visit in November 2005, plaintiff's medications were continued. (Tr. 254). He was assessed with discogenic back pain with muscular spasms, right S1 radiculopathy, and left S1 radiculitis. (Tr. 254). He was to be referred for an EMG to evaluate th radiculopathy. *Id.*

## OPINION

Plaintiff assigns three errors in this case. First, plaintiff contends the ALJ erred in assessing the severity of plaintiff's impairments. (Doc. 7 at 2). Second, plaintiff argues the ALJ erred in assessing plaintiff's subjective complaints of pain and limitations. (Doc. 7 at 4). Third, plaintiff contends that the ALJ failed to comply with Social Security Ruling 96-7p in discrediting plaintiff for his failure to obtain treatment from June 2003 through April 2005 without first considering plaintiff's explanation for his lack of treatment. (Doc. 7 at 5).[1] For the reasons that follow, the Court finds the decision of the ALJ is supported by substantial evidence and should

---

[1] To the extent plaintiff attempts to raise new assignments of error in his reply brief concerning the adequacy of the ALJ's RFC assessment and weight to the opinions of the non-examining and consultative physicians of record (Doc. 9 at 5-7), plaintiff may not raise new issues for the first time in his reply brief. *See Wright v. Holbrook,* 794 F.2d 1152, 1156 (6th Cir. 1986). *See also Bishop v. Oakstone Academy,* 477 F. Supp.2d 876, 889 (S.D. Ohio 2007) ("[I]t is well established that a moving party may not raise new issues for the first time in its reply brief ."). The Court therefore declines to review any new claims of error raised in plaintiff's reply brief.

be affirmed.

Plaintiff first contends the ALJ erred at step two of the sequential evaluation in assessing the severity of plaintiff's impairments. Specifically, plaintiff contends the ALJ failed to consider whether plaintiff's disc bulges, disc protrusions, and annular disc tears are separate and distinct from plaintiff's degenerative disc disease, and whether those conditions are severe in contravention of Social Security Ruling 96-3p.[2] Plaintiff also contends the ALJ failed to address any of the medical evidence in the file documenting that the plaintiff has lumbar radiculopathy, (Tr. 121; 123-124; 131; 133-134; 151; 153; 167; 186; 194; 196; 198; 200; 246; 254), lumbar myofascial syndrome, dyskinesia at the L4-5 and L5-S1 levels, and neuropathic pain (Tr. 246; 251-252), including whether those impairments or combination of impairments are severe or limit plaintiff's ability to perform basic work activities in accordance with Social Security Ruling 96-8p.[3] Plaintiff contends these various other medical impairments "might limit his ability to engage in work related activities." (Doc. 7 at 4).

The Commissioner contends that the back and pain evidence cited by plaintiff was properly identified by the ALJ in his opinion (Tr. 14) and that such conditions are not separate and distinct conditions from degenerative disc disease, as plaintiff claims, but signs and

---

[2]Social Security Rule 96-3p states in pertinent part, "If the adjudicator finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe."

[3]This ruling provides that in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do. SSR 96-8p .

symptoms supporting the diagnosis of degenerative disc disease. (Doc. 8 at 10). The Commissioner further contends that even if these findings were separate and distinct impairments, the ALJ properly followed SSR 96-3p by finding severe degenerative disc disease and then proceeding through the sequential evaluation process in evaluating all of plaintiff's impairments to determine their impact on plaintiff's RFC. *Id.*

The Court agrees with the Commissioner. Even if the back conditions cited by plaintiff in his brief are separate from plaintiff's degenerative disc disease, the ALJ did not commit reversible error by not addressing them separately. *See Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). In *Maziarz*, the ALJ determined that the claimant suffered from several severe impairments but that his cervical condition was not severe. *Id.* Because the ALJ continued with the remaining steps of the sequential evaluation process and considered the cervical condition in determining whether the claimant retained a sufficient residual functional capacity to allow him to perform substantial gainful activity, any alleged error at step two was harmless. Therefore, the *Maziarz* Court found it "unnecessary to decide" whether the ALJ erred in failing to find that the claimant's cervical condition constituted a severe impairment at step two of the sequential evaluation process. *Id.* If the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two "[does] not constitute reversible error." *Maziarz,* 837 F.2d at 244.

In the instant case, the ALJ determined that plaintiff suffered from severe impairments of degenerative disc disease in the lumbar spine and depression. Although the ALJ did not identify the other conditions cited by plaintiff as severe impairments, a review of the ALJ's decision

14

indicates he did consider the limitations and restrictions imposed by plaintiff's remaining

conditions in the remaining steps of the disability determination process as required under Social

Security Ruling 96-8p.[4] When he assessed plaintiff's residual functional capacity, the ALJ

considered the evidence of loss of disc height, disc dessication, disc bulge and protrusion, and the

annular disc tears from 2002 and 2003, as well as the later 2005 evidence from Dr. Sakalkale,

showing tenderness and muscle spasm at L4-5 and L5-S1, diminished lumbar range of motion,

negative straight leg raising, 5/5 strength in the lower extremities, intact sensation, and

symmetrical deep tendon reflexes. (Tr. 14-15, 16). The ALJ considered this evidence, along with

the December 2003 findings of consultative examiner Dr. Akaydin, in determining plaintiff's

RFC. (Tr. 16-17). Because the ALJ considered these impairments when determining plaintiff's

residual functional capacity, including those symptoms and limitations which plaintiff

characterized as being caused by such impairments, any failure on the part of the ALJ to

characterize such impairments as "severe" at step two of the sequential evaluation process does

not constitute reversible error. *Maziarz,* 837 F.2d at 244. Therefore, plaintiff's first assignment

of error is without merit.

In his second assignment of error, plaintiff argues the ALJ erred by finding plaintiff only

partially credible concerning his alleged symptoms and functional limitations. (Doc. 7 at 4).

Plaintiff states his testimony concerning his pain and limitations is consistent with statements

made by his sister on his behalf (Tr. 83-91) and the progress notes and reports from his doctors

and the consultative doctors. (Doc. 7 at 4). Plaintiff contends that none of the evidence shows an

---

[4] When an ALJ determines that one or more impairments are severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p.

ability to perform sedentary work for forty hours per week as required under SSR 96-8p. (Doc. 7 at 4).

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). In this regard, Social Security Ruling 96-7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p. In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other

16

symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or

other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or

sleeping on a board); and 7) any other factors concerning the individual's functional limitations

and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c);

SSR 96-7p.

In the instant case, the ALJ properly assessed plaintiff's credibility in light of the above

requirements, and in particular with respect to his back impairment. The ALJ determined that

plaintiff "is only partially credible with regard to his alleged symptoms and functional

limitations–and not to the extent of precluding a range of sedentary unskilled work." (Tr. 16).

The ALJ considered several factors in making this decision, each of which are supported by

substantial evidence in the record.

First, the ALJ cited to plaintiff's testimony that prolonged sitting was painful. (Tr. 16). In

contrast to this testimony, the ALJ noted that plaintiff admitted he drives and has driven himself

to doctor's appointments, trips of approximately one hour in duration. (Tr. 211, 288). The ALJ

was free to consider this contradictory evidence as one factor in assessing plaintiff's credibility.[5]

Next, the ALJ also cited to plaintiff's testimony that he lost his medical insurance through

workers compensation in June 2003 (Tr. 16), and presumably coverage for prescription

medication. When he was examined in December 2003 by Dr. Akaydin, when he was no longer

insured, plaintiff reported being "pretty stiff" but denied overly severe muscular discomfort of

any kind even though he was taking no prescription medications. (Tr. 214, 215). This evidence

---

[5]The Court notes that the ALJ's RFC assessment accommodated this restriction by limiting plaintiff to
sitting for one hour at a time. (Tr. 17).

was an additional factor the ALJ could consider in determining that plaintiff's allegations of disabling pain were overstated.

The ALJ also pointed to the gap in any medical treatment for over one and one-half years as evidence discounting plaintiff's allegations of disabling pain. (Tr. 16). Plaintiff, in his third assignment of error, contends the ALJ failed to comply with Social Security Ruling 96-7p by discrediting plaintiff for his failure to obtain treatment from June 2003 through April 2005 without first considering plaintiff's explanation for his lack of treatment. (Doc. 7 at 5-6). Plaintiff alleges that he did not obtain treatment between the time his workers compensation claim was denied in June 2003 until April 2005 because he had no means or financial assistance to pay for the treatment. (Tr. 284). Plaintiff also testified that he could not find a doctor to treat him since he did not have any private insurance or workers' compensation coverage, and since he was denied Medicaid coverage. (Tr. 285).[6] Plaintiff contends this was "a plausible excuse" for not getting medical treatment for the time period in question. (Doc. 7 at 5).

In assessing credibility, the ALJ may properly consider an individual's medical treatment history as a factor. Social Security Ruling 96-7p provides in pertinent part:

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or

---

[6] Plaintiff's attorney stated that plaintiff's fiancé, with whom he was living, made too much money for plaintiff to qualify for medical assistance benefits. (Tr. 277).

question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility.

SSR 96-7p. One example of a "good reason" for not seeking medical treatment is the individual's inability to afford treatment and lack of access to free or low-cost medical services. *Id.*

In the instant case, the ALJ did consider plaintiff's allegation that he could not afford treatment. The ALJ specifically questioned plaintiff about his lack of treatment, including the circumstances surrounding his return to treatment in 2005. (Tr. 282, 284). As the Commissioner points out, the body of the ALJ's decision indicates that the ALJ found plaintiff's explanation not believable. The ALJ's decision states, "The claimant's allegations of disabling back pain are not convincing given the absence of medical treatment for more than a year and a half, and given the lack of other records (such as visits to hospital emergency rooms) that might substantiate his complaints of disabling back pain." (Tr. 16). Despite plaintiff's claim he was unable to afford treatment, plaintiff has failed to provide any documentation supporting this claim. In addition, as the Commissioner points out, despite plaintiff's claimed poverty, plaintiff continued to smoke up to two packs of cigarettes per day and drink up to three 12-packs of beer per week during the time he claims he was disabled. The pursuit of these expensive habits belies plaintiff's claim he could not afford any type of treatment or examination during the time period in question.

The failure to seek treatment for a period of time is a factor weighing against plaintiff's credibility. *Hale v. Secretary of Health and Human Services*, 816 F.2d 1078, 1082 (6th Cir. 1987). As the Sixth Circuit recently noted:

To the extent that the ALJ may have considered the absence of contemporaneous evidence in evaluating Claimant's credibility as to his allegedly disabling pain, this was not improper. In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain. *See Williams v. Bowen*, 790 F.2d 713, 715 (8th Cir. 1986); *see also Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 797 (6th Cir. 1986). In some circumstances, of course, a failure to seek examination or treatment may say little about a claimant's truthfulness. *See, e.g., Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) (failure to seek medical care "should not be a determinative factor in a credibility assessment" where claimant is operating under a mental impairment). However, in this case, there is no evidence suggesting that Claimant's mental condition somehow hindered him from seeking examination or treatment. Further, Claimant has not asserted that he could not at least afford an examination during the relevant period, regardless of his ability to afford continuing treatment. Finally, the ALJ's opinion does not suggest that he regarded Claimant's failure to seek medical examination or treatment as "a determinative factor" in his credibility assessment.

*Strong v. Social Sec. Admin.,* 88 Fed. Appx. 841, 846 (6th Cir. 2004).

Like the claimant in *Strong*, plaintiff has not claimed he could not at least afford an examination or some type of treatment during the one and one-half years he went without any treatment for his allegations of disabling pain. Nor has plaintiff provided any evidence he attempted to access free or subsidized medical services at a hospital or clinic and was denied such access. Since the absence of medical treatment or examination was but one factor in the overall credibility analysis, the Court cannot say the ALJ erred in considering plaintiff's lack of treatment in assessing his claim of disabling pain.[7]

---

[7]The Court declines plaintiff's request to remand this matter to the ALJ for consideration of Social Security Ruling 82-59. SSR 82-59 provides that if a claimant fails to follow prescribed medical treatment and such treatment is expected to restore the ability to engage in substantial gainful activity, before a disability determination is made the claimant must be given notice of the issue and an opportunity to show justifiable cause for not following the treatment. This Social Security ruling is inapplicable because the ALJ did not deny benefits based upon a failure to follow any prescribed treatment. Rather, the ALJ considered plaintiff's failure to seek any treatment whatsoever between June 2003 and April 2005 as one factor in assessing plaintiff's credibility. *See McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990) (the issue of poverty as legal justification for failure to obtain treatment does not arise unless a claimant is found to be under a disabling condition).

Finally, the ALJ noted that objective testing failed to reveal the existence of nerve root encroachment or any neurological deficits supporting plaintiff's allegations of disabling pain. (Tr. 16). Despite plaintiff's claim of an inability to engage in virtually any activity, the medical record consistently showed an absence of neurological deficits, and normal strength, sensation and reflexes, and no evidence of muscle atrophy. (Tr. 118, 121, 131, 133, 150, 174, 177, 181-84, 186, 194, 217, 246). In the absence of evidence of muscle atrophy, which is typically associated with severe pain, *see Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *Mullen v. Bowen,* 800 F.2d 535, 547-48 (6th Cir. 1986), and signs of neurological defects, *Blacha*, 927 F.2d at 231; *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1369-70 (6th Cir. 1991) (reliable evidence of pain includes medical evidence of muscle atrophy, reduced joint motion, muscle spasm and sensory and motor disruption), the ALJ had an adequate basis to conclude that plaintiff's objectively established medical condition was not so severe that it could reasonably be expected to produce disabling pain.

The ALJ's decision finding plaintiff less than fully credible with regard to his claims of disabling pain is amply supported by the record. The ALJ's decision reflects that he properly considered the required factors in making his credibility determination. Accordingly, the Court finds that substantial evidence supports the ALJ's credibility finding in this matter.

This Court concludes that, for the above reasons, plaintiff's assignments of error are not well-taken. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT** the decision of the Commissioner be

**AFFIRMED** and this matter be dismissed on the docket of the Court.

Date: 12/19/07

Timothy S. Hogan
United States Magistrate Judge

22

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

WILLIAM H. BOOTHE,
    Plaintiff

      vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:06-cv-784
(Spiegel, J.; Hogan, M.J.)

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **TEN DAYS** after being served with this Report and Recommendation ("R&R"). Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this R&R is being served by mail. That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

23